**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Lawrence James Clardy,

Plaintiff.

v.

**Memorandum Opinion & Order**
Civil No. 01-CV-1275

City of St. Paul, a municipal corporation,
Richard A. Defoe Enterprises, Inc.,
a Minnesota corporation, d/b/a Club Cancun,
Capital Investigations and Security Services, Inc.,
a Minnesota corporation, a/k/a Capital Enforcement,
Jerry Sampson, Joseph Anaya, Jr., Anthony Gardner,
Jonas Groberg, Jason Brubaker, and
John Does Nos. 1 through 10,

Defendants.

John M. Degnan, Esq., Murnane Conlin White & Brandt; Fredrick Leonard Neff, Theresa Ann Freeman, Neff Law Office, Frederick E. Finch, Trassel A. Okelo, Bassford Lockhart Truesdell & Briggs for and on behalf of Plaintiff.

Gail L. Langfield-Seiberlich and Portia M. Hampton-Flowers, for and on behalf of Defendants City of St. Paul, Jonas Groberg and Jason Brubaker.

Sridevi S. Anwar, Rider Bennett, LLP; for and on behalf of Defendants Richard A. Defoe Enterprises, Inc. d/b/a Club Cancun.

Brian Alan Wood and Kevin James Rodlund, Lind Jensen Sullivan & Peterson, for and on behalf of Defendants Richard A. Defoe Enterprises, Inc. d/b/a Club Cancun and Jerry Sampson.

Barbara Ann Zurek and Bradley J. Lindeman; Meagher & Geer, for and on behalf of Capital Investigations and Security Services, Inc., Joseph Anaya, Jr. and Anthony Gardner.

This matter is before the Court upon the defendants' motions for summary judgment. Based on the foregoing, the Court grants summary judgment on the

FILED 8-4-03
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD ______
DEPUTY CLERK ______

federal law claims and declines to exercise supplemental jurisdiction over the state law claims.

**BACKGROUND**

The plaintiff in this matter, Lawrence James Clardy ("Clardy") filed a Complaint in federal district court asserting violations of federal and state law relating to events occurring outside a St. Paul nightclub, Club Cancun, in July of 2000. In particular, Clardy alleges the following federal claims: Count I & II, violations of 42 U.S.C. § 1983; Count III, violations of 42 U.S.C. § 1981, Count IV, violations of 42 U.S.C. § 1985, and Count V, violations of 42 U.S.C. § 1986. He also alleges the following state law claims: Count VI, violations of the Minnesota Human Rights Act ("MHRA"); Count VII, Assault and Battery; Count VIII, False Imprisonment, Count IX, Negligent Hiring, Retention and Supervision; and Count X, Intentional Infliction of Emotional Distress.

The Defendants City of St. Paul, Jonas Groberg ("Officer Groberg") and Jason Brubaker ("Officer Brubaker")("collectively City of St. Paul Defendants"); defendants Capital Investigations and Security Services ("Capital Investigations"), Joseph Anaya ("Anaya") and Anthony Gardner ("Gardner")(collectively, "Capital Investigations Defendants"); and defendants Richard A. Defoe Enterprises Inc. ("Defoe") and Jerry Sampson ("Sampson")(collectively "Club Cancun Defendants"), subsequently filed motions for summary judgment. Those motions are presently before the Court.

## FACTUAL BACKGROUND

The facts herein are presented in the light most favorable to Clardy as the non-moving party.

Clardy is a 26 year-old African American male. He is a 1994 high school graduate of De LaSalle High School. He completed his education in business administration at Metro State University in St. Paul, Minnesota in 2001. (Clardy Dep. at 9-11).

On July 23, 2000, Clardy and his friend Desmond Cornelius ("Cornelius"), who is also African American, went to Club Cancun, a bar and nightclub on Rice Street in St. Paul. (Id. at 29, 69; Cornelius Dep. at 28, 72). Clardy had not consumed any alcohol that evening. (Clardy Dep. at 42).

Before Clardy and Cornelius entered the club, a Club Cancun bouncer told them that they would have to adjust their clothes before entering the club. (Id. at 52). Clardy and Cornelius entered the club where Clardy consumed one alcoholic beverage. (Id. at 42). While at the club, Cornelius ran into his girlfriend, Katie Koelfgen ("Koelfgen") (Id. at 62; Cornelius Dep. at 43). During the evening, Koelfgen became upset with Cornelius because he was talking to another woman in the club. (Koelfgen Dep. at 51-63). She approached Cornelius and threw a drink in his face, and was removed from the bar by Club Cancun security personnel. (Cornelius Dep. at 54; Koelfgen Dep. at 51-53). Clardy left Club Cancun before it closed, after drinking only one alcoholic beverage and spending approximately 45 minutes inside. (Clardy Dep. at 43, 68).

Clardy exited Club Cancun with Cornelious and watched while Cornelious had a conversation with Koelfgen. (Id. at 86 - 87). Koelfgen became argumentative with Cornelious and slapped him across the face. (Id. at 86 – 87). The police officer and security guard who witnessed the incident turned toward Cornelious and told him to "just get the hell out of here." (Id. at 93-94). Cornelious started to walk across the street to leave. He stopped in the street to see if Clardy was following, when the police officer said, "just get the fuck on, just get the fuck on." (Id. at 96-97; 100). Cornelious responded "fuck you all" at which point he was attacked by the police officer, later identified as Officer Brubaker. (Cornelius Dep. at 88; 213-214, 216; Clardy Dep. at 102). Capital Investigations security officer Gardner joined in the attack on Cornelious. (Clardy Dep. at 113; Anaya Dep. at 89).

Clardy watched from the sidewalk lamppost approximately 50 feet away. (Anaya Dep. at 144 to 146). At that time, he was standing still and stating "hold on, hold on." (Clardy Dep. at 112). Koelfgen states that she observed Clardy run around a vehicle, into the street toward Cornelius, yelling at the officers to stop. (Koelfgen Dep. at 76 –78). Clardy was then attacked by bouncers from Club Cancun, and security guards and a police officer joined in the attack. (Clardy Dep. at 113, 119). Capital Investigations security officer Anaya states that he responded to the situation by attempting to keep himself in front of Clardy. (Anaya Dep. at 148 – 153). After only a few seconds, Anaya called over five Club Cancun bouncers, including defendant Sampson, to have them remove Clardy.

(Id. at 152). He did this although Clardy displayed no threatening behavior toward him. (Id. at 152). Club Cancun bouncer Sampson states that he believed Clardy was about to enter the struggle and therefore he restrained him. (Statement of Sampson to St. Paul Police Dep't Internal Affairs Div. at 2-10).

Clardy fell to the ground from the attack and continuously cried "help, help, help" as he was punched in the back, neck, sides, ribs, arms, and head, kneed on his back and sides and dragged with his face on the ground. (Clardy Dep. at 117, 119). Immediately after Clardy was thrown on the ground, he was handcuffed very tightly with his hands behind his back so that he was defenseless as he was being punched and kicked. (Id. at 129). Capital Investigations security officer Gardner placed the handcuffs on Clardy. (Gardner Dep. at 143 – 44; 147 – 48). Gardner states that Club Cancun security personnel told him that Clardy had attempted to intervene in the altercation between Cornelius, Officer Brubaker and Gardner. (Id.).

Koelfgen overheard a group of security guards talking that evening. A few of the security guards were saying that Desmond and Larry were "niggers" and "lowlifes" and got what they deserved. (Koelfgen Aff. of 9/21/2000).

While Clardy was handcuffed, several Club Cancun bouncers remained with him until additional St. Paul Police officers arrived. (Anaya Dep. at 155). Officer Groberg states that in response to Officer Brubaker's call for assistance, he arrived on the scene where he observed Clardy pushed over the truck of the Capital Security vehicle and in handcuffs. (Groberg Dep. at 41-48). Officer

Groberg arrested Clardy and placed him in the back of a police squad. (Id. at 62-65). Clardy was later moved to a different squad car. (Clardy Dep. at 131). While in the second squad car, Clardy made a cell phone call to his cousin, Marquis White, during which he cried and pled for help. (Id. at 132 –134; Vold Aff., Ex. A). Clardy informed White that he was being assaulted by police officers, Club Cancun bouncers and security guards. (White Dep. at 9).

After the telephone call, a police officer, whom Clardy believes was Officer Brubaker, opened the back door to the squad car, punched Clardy in the chest and began to mace him, stating, "you niggers don't fuck with the police." (Clardy Dep. at 134-137). Officer Brubaker left the squad car and Officer Groberg returned to the squad car. (Id. at 139 – 141). Although Clardy's face was burning from the mace, he was able to hear a police radio transmission stating that a police officer had been shot. (Id. at 139, 141-142). Immediately after the police radio transmission, the police squad car sped off at a high rate of speed to what appeared to be the scene of the shooting incident. (Id. at 143).

After some time, Officer Groberg took Clardy to the Central Precinct where the police blew a fan on him to remove the remaining mace. (Id. at 146). Clardy states that, despite having continuously asked for medical attention, he was never seen by a medical provider. Instead, he was in the annex of the jail until he was released on July 24, 2000. (Id. at 150). Officer Groberg disputes this fact. He states that he transported Clardy to Regions Hospital because of an abrasion on his cheek. (Groberg Dep. at 77-78). Officer Groberg states that while at the hospital,

Clardy refused treatment for the abrasion and demanded to be booked so that he could bail out. (Id. at 90 – 91).

Clardy states that he suffered significant physical and psychological damage from the defendants' conduct. He has a scar on his face, has suffered from daily headaches, neck and back soreness and stiffness, ear pain, eye problems as well as hand and wrist pain. (Clardy Dep. at 154 –173; Vold Aff. Ex. B). Clardy has shown signs of stress, paranoia, sleep difficulty, nightmares and depression due to the defendant's conduct on July 23, 2000. (White Dep. at 41-44; Clardy Dep. at 154-155).

**STANDARD OF REVIEW**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); Celeotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). The moving party bears the initial burden of identifying evidence, which demonstrates the absence of a genuine issue of material fact. Id. at 323, 106 S.Ct. at 2552. Once that burden is met, the non-moving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The non-moving party then bears the burden of setting forth specific facts showing that there is evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Because discrimination cases often turn on inferences

rather than on direct evidence, we are particularly deferential to the nonmovant. Snow v. Ridgeview Medical Center, 128 F.3d 1201, 1205 (8th Cir. 1997); Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994). In addition, the Court is required to resolve all conflicts of evidence in favor of the non-moving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). This notwithstanding, in order to defeat summary judgment when a properly supported motion for summary judgment is made, the non-moving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

## DISCUSSION

### I. Claims Against John Does Nos. 1- 5 and John Does 6 –10

In his Complaint, Clardy asserts claims against John Does Nos. 1-5 whom he identifies as "duly appointed, employed, and acting police officers of the City of St. Paul…" (Compl. ¶ 7). He also asserts claims against John Does Nos. 6 -10 whom he identifies as employees of either Capital Investigations or Club Cancun. (Compl. ¶ 10).

The City of St. Paul Defendants argue that the claims alleged against John Does Nos. 1-5 must be dismissed because plaintiff has failed to identify them or what their specific action or involvement was regarding the incidents at Club Cancun.

The Court, however, declines to dismiss these defendants. The Court notes that Clardy has conducted discovery in this matter and by now should have

ascertained the identity of the individuals involved in the incident at Club Cancun. However, the Court finds that Clardy has sufficiently pleaded which claims he alleges against the John Doe defendants. Further, the facts of this case indicate that there was considerable confusion at the time the incidents alleged took place given the number of people involved and the intensity of the events. As such, the Court sees no reason to summarily dismiss any of the John Doe defendants at this point in the litigation.

## II. Federal Claims

### A. Counts I and II: 42 U.S.C. § 1983 Claims

#### 1.) Official Capacity

Clardy asserts claims pursuant to 42 U.S.C. § 1983 against Officer Brubaker, Officer Groberg, John Does 1-5 and the City of St. Paul. The City Defendants argue that Clardy has failed to establish a § 1983 cause of action against the officers in their personal capacity. Clardy concedes that he is only asserting his § 1983 claims against the officers in their official capacity. Where a § 1983 claim is asserted against a government official in his official capacity, the action is one against the entity. See Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (1999). As such, all claims against Officers Groberg, Officer Brubaker and John Does 1 – 5 are forthwith claims against the City of St. Paul.

#### 2.) Claims Against the City of St. Paul

In Count I of the Complaint, Clardy asserts a § 1983 claim against Officer Brubaker, Officer Groberg and John Does 1-5. The Complaint states that these

defendants, "acting under color of state law, violated Mr. Clardy's clearly established rights to be free of excessive and unreasonable force, unreasonable seizures, deprivation of liberty without due process of law, summary punishment, failure to intervene, false arrest and detention, illegal interrogation, denial of a fair trial, denial of medical attention and verbal abuse and harassment." (Compl. ¶ 25). In his memorandum of law, Clardy appears to retain only the excessive force, unreasonable seizure, deprivation of liberty and false arrest, and denial of medical attention claims. The Court concludes that the other claims are abandoned and dismisses them with prejudice. Count II of the Complaint alleges a 42 U.S.C. § 1983 claim against the City of St. Paul for failing to properly train its officers in the use of force.

**a.) Monell Claim**

As discussed, *infra*, Clardy's Section § 1983 claim is against the City of St. Paul. A § 1983 claim against a governmental entity is considered a Monell claim and is examined according to the law set forth in Monell v. Department of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In Monell, the U.S. Supreme Court held that a political subdivison can be liable for the unconstitutional acts of its officials and employees only when the plaintiff establishes that "those acts implement or execute an unconstitutional policy or custom of the subdivision." Id. at 694. That is, a § 1983 claim against a governmental entity will not stand, "unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell, 436 U.S. at 691.

Therefore, for a municipality to be liable, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation." Monell, 436 U.S. at 694; Board of Comm'rs v. Brown, 520 U.S. 397, 400, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)(only "deliberate" action by a municipality can meet the "moving force" requirement). Clardy does not point to a specific municipal policy, therefore, the Court looks to whether he has demonstrated a relevant City of St. Paul custom.

To prevail on his Monell claim, Clardy must demonstrate that a municipal custom exists by showing:

> (1.) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> (2.) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials of that misconduct; and
> (3.) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, i.e., [proof that the custom was the moving force behind the constitutional violation].

Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (citing Ware v. Jackson County; 150 F.3d 973, 880 (8th Cir. 1998).

Clardy first contends that his "injuries were clearly the result of the City of St. Paul's custom of not taking citizen complaints from Club Cancun patrons seriously." (Clardy's Mem. Opp'n to City of St. Paul Defs.' Mot. Summ. J. at 12).

A "city may be subject to § 1983 liability for failing to act on complaints of . . . misconduct by police department employees only if it had a 'policy or custom' of failing to act upon prior similar complaints of unconstitutional conduct, which

caused the constitutional injury at issue." Andrews v. Fowler, 98 F.3d 1069, 1074-1075 (8th Cir. 1996)(citing Monell, 436 U.S. at 694). In support of his claim, Clardy points to the testimony of Officer Groberg and a memorandum written by a Sergeant Vick of the City of St. Paul Police Department.

Officer Groberg testified that the City of St. Paul police receive complaints from Club Cancun patrons who confuse them with Capital Investigations officers:

> [T]here's been people. . . that would call our sergeants to complain on police officers being up there, and, you know, they want to make an accusation that we were rude to them or we were—did whatever to them, whatever the complaint was. And when the sergeants would say. . . 'were they wearing a blue uniform or dark uniform?' .... 'Well, he was wearing a black uniform.' 'Well, its not the police. It's the security.' 'No it's the police. They got a badge. They got a gun.' They would say, 'no, security people wear the black uniform. We have the blue uniform.'

(Groberg Dep. at 49, 50).

Clardy also offers Sergeant Vick's memorandum. The memorandum was written on December 30, 2000 and states:

> It has been brought to my attention that some of my officers have received an IAU complaint from an incident that happened at Club Cancun.
>
> Over the past year and a half, I have received numerous complaints from the patrons of Club Cancun regarding the actions of Capital Security. I usually am sent to Club Cancun regarding complaints that a "St. Paul Officer" has done something to upset Club Cancun's clientele. Upon arrival at the Club these citizens are adamant that it was the "St. Paul Police" that mistreated them.
>
> The first thing I ask these citizens upon arrival is what color was the uniform the officer was wearing. Nine times out of ten they tell me that the officer was wearing a "Black" uniform. It should be noted that Capital security [sic] are armed security and they wear black uniforms. After telling these parties that it was not St. Paul

> Police who they dealt with but security for the club they usually argue the fact with me because nine times out of ten they are intoxicated and they think that capital security [sic] are St. Paul Police. (My point is, I have had numerous occasions at Club Cancun were [sic] people have made allegations against St. Paul Police Officers when in fact they are talking about Capital Security and after investigating the incident have found that Capital Security had acted properly...).

Id.

This is the only evidence that Clardy presents in support of his claim. Officer Groberg's testimony and Sergeant Vick's memorandum, however, do not support Clardy's claim that the St. Paul Police Department has a custom of ignoring complaints against the City of St. Paul Police. To the contrary, the testimony and the memorandum suggest that the City of St. Paul Police has a practice of investigating complaints regarding officer misconduct. Further, Clardy has not submitted evidence that would suggest that the investigation was inadequate or that it was in regard to any kind of unconstitutional conduct by the police officers. Rather, he relies on his own assertion that, "[s]uch disregard for the valid complaints of citizens shows callousness towards persistent and widespread unconstitutional conduct by St. Paul Police Officers that is chronic throughout the Department." (Pl.'s Mem. Opp'n to City of St. Paul Defs.' Mot. Summ. J. at 12). Clardy has simply not made this showing.

In Mettler v. Whitledge, 165 F.3d 1197 (8th Cir. 1999), the Eighth Circuit found that there was no custom or policy of a "continuing, widespread, persistent pattern of unconstitutional conduct" by the defendant. Id. at 1204. In that case, the

parent of a young man who had been shot and killed by police after he had shot and killed their police dog, filed a § 1983 claim against Ramsey County. There, the plaintiff presented evidence on the record indicating that fifteen citizens had filed complaints against the two alleged offending deputies. Seven of the complaints accused the one deputy of excessive force or unnecessary force and two complaints against the other deputy accused him of excessive or unnecessary force. Id. at 1204 –1205. The Eighth Circuit held that there was no genuine issue of material fact on the plaintiff's Monell claim. Id. at 1204. The court stated that the plaintiff, "has produced no evidence regarding the factual background of these previous complaints, nor has she shown that the incidents giving rise to these complaints bear any factual similarity to the . . confrontation with her son." And that the plaintiff had, "also failed to produce evidence that the investigations into these complaints, or investigations into any complaints filed against other Ramsey County Sheriff's deputies, were inadequate." Id. at 1205.

Similarly, Clardy has presented evidence on the record that there have been other citizen complaints regarding St. Paul Police conduct at Club Cancun. The record also indicates that the City of St. Paul investigated those complaints. Clardy, does not point to specific facts indicating that the prior complaints against the City of St. Paul police officers were for constitutional violations akin to those he asserts against the City of St. Paul police officers, or were in other ways factually similar to the case at hand. Nor does he demonstrate that the complaints were inadequately investigated. The evidence he offers is silent on both points.

As the court in Mettler stated, "the mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging excessive force." Id. at 1205 (citing Rogers v. City of Little Rock, 152 F.3d 790, 799 (8th Cir. 1998)).

Here, not only does Clardy's evidence not suggest that the City of St. Paul has a municipal custom of permitting or encouraging excessive force, it also does not suggest that the City of St. Paul has a custom or policy regarding Clardy's additional §1983 claims of unreasonable seizure, deprivation of liberty and false arrest, and denial of medical attention claims. Further, the evidence does not suggest that the City of St. Paul has a custom or policy of ignoring complaints of unconstitutional conduct.

Accordingly, summary judgment is granted on Count I of the Complaint.

**b.) Inadequate Training**

Clardy also argues that the City of St. Paul is liable under § 1983 for "failing to properly train its officers in the use of force." The U.S. Supreme Court has held that, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388, 109, S.Ct. 1197 (1989). In order to support his claim, Clardy must first demonstrate that (1) the city's hiring and training practices are inadequate. Second, (2) that the city was deliberately indifferent to the rights of others in adopting them. That is, the evidence must show that the "failure to train

reflects a deliberate or conscious choice by a municipality," Id. at 389; Andrews, 98 F.3d at 1076. Finally, he must show, (3) that the deficiency actually caused his injury. See Larson By Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996).

In support of his deficient training claim, Clardy points to contradictions in Officer Brubaker's deposition testimony and his incident report. In particular, he notes that Officer Brubaker testified in his deposition that Cornelius said "fuck you" twice while Officer Brubaker's incident report does not include this information. He also notes that Officer Brubaker put in his incident report that Clardy and Cornelious were kicked out of the club, when they in fact were not. In addition, Clardy asserts that Officer Brubaker was involved in another excessive force incident involving an African American man whom he forced to the ground and then handcuffed even though the man was not violating the law and had no outstanding warrants. Officer Brubaker did not document the incident and the City of St. Paul only reprimanded him for not adequately documenting the incident. (Clardy's Mem. Opp. to City of St. Paul Def's Mot. Summ. J. at 13 (citing Brubaker Dep. at 110 –111)).

Initially the Court notes that the evidence regarding Officer Brubaker's failure to document information, even if a consequence of a deficient training program, are irrelevant to Clardy's particular constitutional claims in that he cannot show that this deficiency was the "actual cause" of his injury.

More significantly, however, the Court finds that these individual incidents involving Officer Brubaker alone are insufficient to create a jury question as to

whether the City of St. Paul inadequately trains its police officers to the point that it amounts to deliberate indifference to the rights of those persons with whom the police come into contact. See City of Canton, 489 U.S. at 388.

Clardy concedes that Officer Brubaker and Officer Groberg testified that they were trained in multiple areas of law enforcement. Clardy's memorandum states:

> Both officers testified in detail about the training they received from the St. Paul Police Academy. Officer Groberg testified in his deposition that he received training at St. Paul Police Academy in, among other things, arrest procedures and department policy. He was also trained in pursuit driving. Part of that training also includes adequate documentation of any incidents involving the use of force. That training also includes assessments of how to deal with situations that start as altercations between two people and quickly escalate into brawls involving multiple parties.

(Pl.'s Mem. Opp'n to City of St. Paul Defs.' Mot. Summ. J. at 12 –13).

Rather than arguing that the City of St. Paul inadequately trains its police officers, Clardy's main argument appears to be either that Officer Brubaker specifically was not adequately trained or did not adequately follow his training. The U.S. Supreme Court has made clear, however, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." City of Canton, 489 U.S. at 391.

Because, Clardy's support for his inadequate training claims rests on evidence regarding Officer Brubaker's conduct alone, summary judgment is granted on Count II of the Complaint.

**B. Counts III, IV, and V: § 1981, § 1985, § 1986**

In Count III of the Complaint, Clardy alleges a § 1981 claim against defendants Officer Brubaker, Officer Groberg, Anaya, Gardner and Sampson. Clardy contends that Defendants Anaya, Gardner and Sampson were acting in the course of their employment and therefore, Capital Security and Defoe are liable under the doctrine of *respondeat superior*. (See Compl. ¶ 38 – 41).

In Count IV of the Complaint, Clardy alleges a § 1985 claim against all defendants for engaging in a conspiracy to deprive him of his civil rights and, "the civil rights of other people of color who patronized Club Cancun in violation of Section 1985." (Compl. ¶46).

Further, in Count V of the Complaint, Clardy alleges a § 1986 claim against defendants Officer Brubaker, Officer Groberg, Anaya, Gardner, and Sampson for, "having knowledge of the conspiracy to deprive Mr. Clardy of his civil rights under 42 U.S.C. § 1985, and having power to prevent or aid in preventing the commission of the same, neglected or refused to do so." (Compl. ¶ 51).

In his memoranda of law in opposition to the defendants' motions for summary judgment, Clardy did not respond to the defendant's arguments against his §1985 or § 1986 causes of action. In addition, he did not respond to the City of St. Paul Defendants' and the Capital Investigations Defendants' arguments for summary judgment on his § 1981 claims. He did, however, respond to Club Cancun Defendants' arguments against his § 1981 claim. The defendants, in their reply memoranda of law, noted that Clardy did not defend his § 1981, § 1985, and

§ 1986 claims and inferred that Clardy had abandoned those claims. At oral argument, the defendants reiterated their understanding that these claims had been abandoned. Likewise, during oral argument, Clardy's counsel did not respond to the defendants' contentions that the § 1981, § 1985 and § 1986 claims were dropped, nor did they argue in support of these claims. At the close of oral argument, Clardy's counsel asked the Court whether it required further briefing on any matters. The Court responded that it did not. Subsequently, and absent leave of the Court, Clardy's counsel submitted a letter to the Court, arguing that they did not intend to dismiss the § 1981, § 1985 and § 1986 claims. The defendants duly opposed the filing of this letter and the arguments therein opposing summary judgment on those claims.

The Court finds that Clardy has had ample opportunity to address these federal claims both in his memoranda of law and at oral argument. He was also sufficiently on notice that the defendants understood that these claims had been dropped. Clardy has failed to prosecute his claims in a manner consistent with the Federal Rules of Civil Procedure. As such, the Court considers these claims waived and grants summary judgment on Count III of the Complaint as to the City Defendants and Capital Investigations Defendants. Likewise, it grants summary judgment on Counts IV and V of the Complaint against all defendants. Count III, Clardy's § 1981 claim against Club Cancun remains before the Court.

**1.) Section 1981 Claim Against Club Cancun Defendants**

In his memorandum of law, Clardy argues that, "Club Cancun employees by their actions denied him the right to full and equal benefits of patronage at Club Cancun." He also argues that "the entire scope of a contractual relationship [with Club Cancun] is protected under 42 U.S.C. § 1981."

Section 1981 of the Civil Rights Act of 1866 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> For the purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.
>
> The rights protected by this section are protected against impairment by non-governmental discrimination and impairment under color of state law.

Id.

In order to state a prima facie contract claim under § 1981, a plaintiff must show that (1.) the plaintiff is a member of a racial minority; (2.) defendants intentionally discriminated against plaintiff on the basis of race; and (3.) the discrimination was directed toward one or more of the activities protected by the statute. Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996); Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1101 (10th Cir. 2001); Rustein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1235 (11th Cir. 2000).

**a.) Right to Contract**

Clardy, has satisfied the first two prongs of a § 1981 prima facie case. It is undisputed that Clardy is African American, and, viewing the facts in the light most favorable to Clardy, a question of fact exists on the second prong. Clardy has presented evidence that Koelfgen heard security guards state that Clardy and Cornelius were "niggers" and got what they deserved. (Koelfgen Aff. of 09/21/2000). The Court assumes for the purposes of summary judgment that by "security guards" Koelfgen could have meant "Club Cancun bouncers."

However, Clardy has not shown that he was making or enforcing a contract within the meaning of § 1981. Therefore, Clardy has not established the third prong of a § 1981 right-to-contract prima facie case.

The Eighth Circuit and other circuit courts of appeal have held that where the contractual exchange has already occurred, no contractual relationship remains for the purposes of a § 1981 claim. See Youngblood v. Hy-Vee Food Stores, 266 F.3d 851 (8th Cir. 2001)(holding no valid § 1981 claim where the plaintiff was able to purchase the beef jerky before she was detained for allegedly stealing it); see also, Chu v. Gordmans, Inc., 2002 WL 802353 (D. Neb. Apr. 12, 2002); Anne-Marie G. Harris, Shopping While Black: Applying 42 U.S.C. § 1981 To Cases Of Consumer Racial Profiling, 23 B.C. THIRD WORLD L.J. 1, n. 181 (2003) (listing cases).

In this case, Clardy had already gained admittance and made use of Club Cancun as a source of entertainment. The record indicates that he entered the

club, purchased an alcoholic beverage and spent approximately 45 minutes inside before voluntarily leaving. At the time of his alleged attack he had already exited the club and was standing outside.

As the court in Youngblood stated, "Section 1981 does not provide a general cause of action for race discrimination if in fact it occurred. The requirement remains that a plaintiff must point to some contractual relationship in order to bring a claim under Section 1981." Youngblood, 266 F.3d at 855. Clardy has made no such showing. Thus, Clardy may have a cause of action regarding his alleged assault but it does not lie in the context of a § 1981 claim.

Accordingly, summary judgment is granted on Clardy's § 1981 right-to-contract claim.

**b.) Full-and-Equal Benefit Claim**

Section 1981 states that persons shall have the right to "the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981 (a). In Youngblood, the Eighth Circuit held that, " '[b]ecause the state is the sole source of the law, it is only the state that can deny the full and equal benefit of the law.'" Id. at 855 (quoting Chapman v. Higbee Co. 256 F.3d 851, 855 (6th Cir.2001)(citing Mahone v. Waddle, 564 F.2d 1018, 1029 (3d Cir. 1977)). Here, the Club Cancun Defendants are not state actors. Further, Clardy neither alleges in his Complaint nor presents evidence suggesting that they were acting under color of state law. See, e.g., Adams v. Boy Scouts of America-Chickasaw Council, 272 F.3d 769 (8th Cir. 2001)(affirming summary judgment on

plaintiff's claims where non-governmental defendants were not acting under color of state law). Accordingly, summary judgment is granted on Clardy's § 1981 full-and-equal benefit claim.

## II. State Law Claims

Having granted summary judgment on Clardy's federal claims, the Court has only his state law claims for violations of the Minnesota Human Rights Act; Assault and Battery; False Imprisonment; Negligent Hiring, Retention and Supervision, and Intentional Infliction of Emotional Distress, before it. The Court has discretion in exercising supplemental jurisdiction over these claims. A federal district court can only hear cases over which it has original jurisdiction under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Here, the Court has original jurisdiction over Clardy's federal claims pursuant to § 1983, § 1981, § 1985 and § 1986. Therefore, it is able to hear related state law claims pursuant to 28 U.S.C. § 1367(a). The Court determines that it will exercise supplemental jurisdiction over Clardy's state law claims. Because questions of fact exist on these claims, they will be preserved for trial. Accordingly, summary judgment is denied as to Counts VI, VII, VIII, IX, and X of the Complaint.

**IT IS HEREBY ORDERED** that:

1.) The City of St. Paul Defendants' Motion for Summary Judgment [Docket No.45 ] is **GRANTED** on Counts I, II, III, IV, and V of the Complaint and **DENIED** as to the remaining Counts.

2.) The Capital Investigations Defendants' Motion for Summary Judgment [Docket No. 32] is **GRANTED** on Counts III, IV, and V of the Complaint and **DENIED** as to the remaining Counts.

3.) The Club Cancun Defendants' Motion for Summary Judgment [Docket No. 38] is **GRANTED** on Count III, IV, and V of the Complaint and **DENIED** as to the remaining Counts.

4.) Plaintiff Clardy's Complaint [Docket No. 1] is **DISMISSED WITH PREJUDICE** as to Counts I, II, III, IV, and V.

Date: August 4, 2003

Michael J. Davis
United States District Court